## DAVISON-PAXON CO. v. CALDWELL.

### No. 9645.

Circuit Court of Appeals, Fifth Circuit.

Oct. 29, 1940.

Rehearing Denied Jan. 14, 1941.

SIBLEY, Circuit Judge, dissenting.

Houston White, of Atlanta, Ga., for appellant.

John D. Allen and R. B. Pullen, both of Atlanta, Ga., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to enjoin the enforcement by garnishment against plaintiff of a state court judgment for debt. It was brought in the bankruptcy court on the ground that the debt had been discharged in bankruptcy, and because of the settled but erroneous state of the decisions in Georgia,[1] plaintiff had been compelled to invoke the jurisdiction of the bankruptcy court.[2] The de-

---

[1] Atlanta Skirt Mfg. Co. v. Jacobs, 8 Ga.App. 299 (2), 68 S.E. 1077; Levy v. M. C. Kiser Company, 31 Ga.App. 113, 120 S.E. 34; Crawford v. Davison-Paxon Co., 46 Ga.App. 161, 166 S.E. 872.

[2] Local Loan Company v. Hunt, 292 U. S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195.

fendant contested the suit on the ground (1) that the matter was one for decision in the state courts and not for the invocation of the bankruptcy jurisdiction; (2) that the judgment it had obtained was a conclusive adjudication that the debt was not discharged in bankruptcy. The district judge maintaining his jurisdiction on Hunt v. Loan Company and determining the effect of the state court judgment on the pleadings in that court, concluded that the debt was dischargeable and had been discharged and granted the relief prayed.

This appeal tests the correctness of that ruling. This is the record on which it rests.

On February 22, 1939, appellant here filed suit against appellee in the municipal court of Atlanta for $444.58 on account of merchandise purchased from it for the period from September, 1936, to December, 31, 1938, as per itemized statement attached to the petition. On March 2, 1939, she filed a plea to the jurisdiction of the state court based on her alleged non-residence, and on March 6, 1939, she filed her voluntary petition in bankruptcy scheduling defendant as one of her creditors and was duly adjudged bankrupt.

On March 24th, appellant filed in the state court suit an amendment alleging:

"1. That at the time the defendant purchased the merchandise listed on the itemized statement marked 'Exhibit A' and attached to the petition, defendant was insolvent and had no present intention to pay for same and concealed her insolvency and intention to pay for same, and concealed her insolvency and intentions with respect to said purchases from your petitioner.

"2. That your petitioner relied on the defendant's promise to pay for same, and was damaged in that it lost merchandise of the value listed in the itemized statement marked 'Exhibit A.'

"3. That the action of the defendant in purchasing said merchandise without a present intention to pay for same, and knowing her promise to pay for same was false, was deceitful and fraudulent.

"4. That your petitioner is damaged in the sum of $444.58, plus interest at 7% per annum from August 1, 1937 to date."

Whereupon, on March 29th, appellee defendant in that suit filed a plea for a stay, setting out therein that the debt upon which the suit was predicated was dischargeable in bankruptcy. On April 3rd, the plea to the jurisdiction was overruled, as waived by defendant's filing her plea for a stay in bankruptcy, and there was a judgment as follows:

"The within case coming on before me for trial after the petition was amended and facts introduced to support the amendment with reference to all allegations therein and the petition,

"It is considered, ordered and adjudged that the pltf. recover of the defendant in the sum of Three Hundred and Twenty and 88/100 ($320.88) Dollars and all costs of this action."

Appellee was granted her discharge and it was ordered that she "be discharged from all debts and claims in bankruptcy which are made provable by said acts against her estate excepting such debts as are by law excepted from the operation of a discharge in bankruptcy." In July, 1939, she filed in the bankruptcy court, an application for injunction, reciting these facts and that notwithstanding her discharge, Davison-Paxon, plaintiff in the state court suit, had sued out a garnishment against her employer to collect on the judgment debt which had been discharged in bankruptcy.

It was not denied below, it is not denied here, that the decisions of Georgia are to the effect that a debt contracted as, according to the amended petition this debt was, is, within the exception of Sec. 17, sub. a (2), of the Bankruptcy Act,[3] "a liability for obtaining money or property by false pretenses or false representations." What was in question below, what is in question here is whether a debt created as this one was, according to the allegations of the amended petition, is such a liability.

The district judge thought it was not. We agree. But for the Georgia decisions holding that the purchase of goods with no present intention to pay, results in a debt which is a liability for obtaining money or property by false pretenses and false representations, we should regard the question as admitting of only one answer. The amended petition carefully refrains from charging that the defendant represented anything or made any pretenses. It charges that she was insolvent, that she had no present intention to pay for the goods purchased and that

---

[3] 11 U.S.C.A. § 35, sub. a(2).

she concealed her insolvency and intention to pay for the same from the plaintiff and that her conduct in purchasing the merchandise without present intention to pay for same and knowing that she was insolvent, was false, deceitful and fraudulent. We think it can hardly be doubted that her conduct in so doing was deceitful in the sense that she did not act in a straightforward and honest way in not making full disclosure of her financial condition, but such conduct is not within the exception. It does not except from discharge, debts created by obtaining credit through concealment of insolvency and present inability to pay. It excepts from discharge "Liabilities for obtaining money or property by false pretenses or false representations." Within the meaning of that statute then, there were no false pretenses, no false representations here. There was merely the obtaining of credit without full disclosure with the knowledge that if full disclosure had been required, credit might well not have been given, but that was all. A remedial statute, like that of bankrutpcy intended for the relief of debtors, must, insofar as denial of discharges and therefore of relief, be construed strictly so that all debts except those coming exactly within the exception will stand discharged. Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717.

Appellant, conceding of course that the judgment in the state court suit is not res judicata of the question whether the debt was dischargeable in bankruptcy, because the judgment was rendered before the discharge, insists that the judgment is conclusive, that the facts are as pleaded in the amendment, and that, though there was no overt statement or representation made, the purchase on credit was an implied representation that appellee intended to and could pay for the purchased goods.

In support of this view appellant in addition to its reliance on the Georgia cases puts its reliance on the generally settled rule of law that a purchase of the kind pleaded is deceitful and because of that deceit, the sale may be rescinded. This is certainly true but this is not the question before us. That question is, does the statute except from the discharge all obligations affected with deceit or fraud in their incurring whether the deceit or fraud is actual or implied, or does it except only those where there is actual overt false pretense or representation? We think it clear that only the latter are excepted. In

Zimmern v. Blount, 5 Cir., 238 F. 740, 744, we have said so: "A fraud may be committed in ways other than by the making of false representations, and be actionable. In considering the third count, as an original cause of action, independent of the plea of discharge in bankruptcy, it would be unimportant whether the alleged fraud was committed by the making of false representations or otherwise. However, in considering the second replication to the plea of discharge in bankruptcy, as a sufficient answer to it, it is important to determine not only whether the replication sufficiently charges fraud, but fraud 'by obtaining property by false pretenses or false representations,' which is the only kind of fraud that prevents the release of bankrupt from his provable debts. Section 17a (2), Bankruptcy Act of 1898 as amended."

In re Nuttall, D.C., 201 F. 557, is to the same effect as are also the following state cases: Miller v. Sutliff, 241 Ill. 521, 89 N. E. 651, 24 L.R.A.,N.S., 735; J. M. Radford Grocery Company v. Halper, Tex.Civ.App., 274 S.W. 1023. No cases are cited to us, we have found none, except the Georgia cases holding that debts, incurred as these were, are excepted from the discharge.

Appellant does indeed cite texts and decisions holding that where the buyer at the time of the purchase is insolvent and intends not to pay for the goods, it is a fraud which will render his title voidable. It cites too, a Georgia Code Section, 96-206, providing: "Where one who is insolvent purchases goods, and, not intending to pay therefor, conceals his insolvency and intention not to pay, the vendor may disaffirm the contract and recover the goods, if no innocent third person has acquired an interest in them." But it cites no cases from either federal or state courts construing the bankruptcy statute as excluding from the discharge cases of this kind, where, though it may be conceded that the debts were created by fraud, there were no false pretenses or representations. Indeed, it could not cite any, for it is settled law that debts created by the fraud of the bankrupt are not excepted by the operation of the discharge, unless so created while he was acting as an officer or in a fiduciary capacity. Crawford v. Burke, 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147; Bullis v. O'Beirne, 195 U.S. 606, 25 S.Ct. 118, 49 S.Ct. 340; Zimmern v. Blount; In re Nuttall, supra. The only kind of fraud which will prevent a discharge is that committed by fraudulent misrepresentations of fact or by such con-

duct or artifice having a fraudulent purpose as will throw one off his guard and will cause him to omit inquiry or examination which he would otherwise make. It is not claimed that there was such misrepresentation, artifice or trick. It is merely claimed that the application for credit coupled with plaintiff's silence as to her insolvency and "present intention" constituted misrepresentation or pretense.

We do not think that this will do. The judgment was right. It is affirmed.

SIBLEY, Circuit Judge (dissenting).

The amending of the suit on account in the State court into one for damages for deceitful obtaining of goods was regular. Ga.Laws of 1913, p. 164, § 37(c). Though done to meet a bankruptcy, it was upheld in Levy v. Kiser Co., 31 Ga.App. 113, 120 S.E. 34. The resulting judgment is entirely valid, and ought to be accepted as establishing that a value of $320.00 of goods was obtained as alleged. In the District Court neither side sought to show what the evidence before the State court was, or the real truth of the case, if that were permissible. The District Judge ought not to have speculated about it. The majority opinion concedes this.

The liability adjudged is not one for a debt for goods purchased, but for damages by a deceit in obtaining goods that would otherwise not have been delivered. It arises under the familiar principle that one deceived into making a contract has the option either to rescind the contract and recover what he parted with—the very goods —, or to let the contract stand and recover the damage done him by the deceit. Hartsfield Co. v. Newlin, 49 Ga.App. 546, 176 S.E. 516; Louisville Dry Goods Co. v. Lanman, 135 Ky. 163, 121 S.W. 1042, 28 L.R.A.,N.S., 363, 135 Am.St.Rep. 451. See also Bacon & Co. v. Moody, 117 Ga. 207, 43 S.E. 482. The measure of the damage is not the price agreed to be paid, but is the loss really suffered by making the contract—the true value of the goods which may or may not equal the price charged. The case is not proven by showing merely a purchase by an insolvent who does not disclose his insolvency, although he afterwards goes into bankruptcy. Brooks v. Pitts, 24 Ga.App. 386, 100 S.E. 776. It must be shown that in offering to buy he had no intention of paying, knew he could not be made to pay, and intended to get the goods without paying; in short, that he

pretended to be a purchaser but was in truth a deadbeat and a cheat. It is not a case of mere failure to mention a fact where there is no confidential relationship to require it. By the act of offering to buy in the place of trade he presents himself as a purchaser at least of good intentions. Many instances occur, even in criminal law, where such conduct, coupled with a morally fraudulent purpose, is esteemed a false representation and punished, though no express falsehood is told. If a purchaser without means knows he is supposed by the storekeeper to be some other person of wealth, and by silence on the point obtains credit, no one would doubt there was a false pretense. He was pretending to be another person. So one who presents an order for money which is payable to another impliedly represents himself to be that other. Rex v. Story, R. R. 60. One who sells property knowing it is not his, to the loss of the buyer, by offering to sell has impliedly represented that it was his. Reg. v. Samson, 52 L.T.Rep.,N.S., 772. One who gives a check which he knows is bad to obtain goods, though he says not a word about it, has obtained the goods on a false pretense, because by universal practice a check is drawn only against a bank which is bound to pay. If he in like manner gets one to endorse such check to the indorser's damage, there is an implied false pretense. Guernsey-Newton Co. v. Napier, 151 Wash. 318, 275 P. 724. When a little girl bought goods to the amount of twenty-five cents and tendered in payment a twenty dollar gold piece which she thought was a dollar, and the merchant, perceiving the mistake, gave her change for a dollar, saying nothing, he was a cheat and a swindler. Jones v. State, 97 Ga. 430, 25 S.E. 319, 54 Am.St.Rep. 433. So in Crawford v. State, 117 Ga. 247, 43 S.E. 762, opinion by Judge Lamar, afterwards Justice Lamar, the indictments charged cheating and swindling because the defendants "did falsely and fraudulently represent" that the boundaries of land on which they were selling the timber were otherwise than they knew the truth to be. The evidence was that months previously the defendants had in good faith so stated the boundaries, but afterwards had become aware that a large portion of the timber included was not theirs. In a new negotiation, without saying anything, they signed a conveyance written by the purchaser which showed he still thought the boundaries were as previously represented. The failure to correct the mistake,

and the act of taking the money paid under mistake was held cheating and swindling. Though not a legal authority, the most celebrated deceit case in history is instructive here, that of Ananias; Acts of the Apostles, Chap. 5, Verses 1 to 5. By the preceding verses it appears that by selling all their property and putting the entire proceeds into a common relief fund the contributors were acquiring a high repute and a right to future support. In order to acquire both, Ananias sold his property and without any express statement paid in a part only of the proceeds, intending that it be understood to be all. Peter emphatically pronounced his conduct a lie, though only an implied false representation. Sapphira's case, which follows, rested upon an express false representation. No difference was recognized in their punishment.

We have here to do, not with criminal statutes, their strict construction and their refined distinctions, but with a bankruptcy statute which intends to discharge honest debtors from their honest debts but to reprove commercial dishonesty, and expressly denies discharge from a "liability for obtaining money or property by false pretences or false representations." In deliberately chosen words the Congress indicates a difference between false pretences and false representations. The latter may appropriately mean express misrepresentations. "False pretences" more appropriately refer to implied representations, or conduct intended to create and foster a false impression. In both cases of course an intended deceit is essential. In either a discharge is made ineffectual. *

In applying this provision of the Bankruptcy Act, Judge Russell, later the Chief Justice of the State, says for the court on the exact point now before us: "A false representation may consist in the purchasing of goods with no present purpose of paying for them, and in contemplation of a fraudulent insolvency. To buy goods without a present intention to pay is a false representation of one's intention. Therefore to buy goods without a present intention to pay will avoid a discharge. Of course, ordinarily, promises to perform

some act in the future will not amount to fraud in legal acceptation, although subsequently broken without excuse. This is especially true of a promise to pay money. Otherwise any breach of contract would amount to fraud." Atlanta Skirt Mfg. Co. v. Jacobs, 8 Ga.App. 299, 68 S.E. 1077, 1078. This ruling has since been consistently adhered to in the Court of Appeals. The Supreme Court of Georgia in Wells v. Blitch, 182 Ga. 826, 187 S.E. 86, 90, along the same line of thought, held that a discharge in bankruptcy did not relieve the bankrupt from a liability to his sister which arose by his selling incumbered land to her for cash, leading her to understand that he would discharge the incumbrance with the money but intending at the time not to do so. The court said: "To accept money as one's agent, without a present intention of using the money * * * for the benefit of the bailor, is a false representation of one's intention, and will avoid a discharge."

The Georgia court does not stand alone. The case of Guernsey-Newton Co. v. Napier, 151 Wash. 318, 275 P. 724, above cited, in which the endorser without express misrepresentation was induced to put his name on a bad check, holds that discharge in bankruptcy did not relieve from the liability to the endorser who had the check to pay. In Boerner v. Cicero Smith Lumber Co., Tex.Civ.App., 293 S.W. 632, it was held that lumber bought with no intention to pay for it creates a liability for property obtained by false pretences which is not discharged in bankruptcy. In Higginbotham-Bartlett Co. v. Powell, Tex.Civ.App., 270 S.W. 193, the same law was recognized, though the case ended otherwise because fraudulent intent not to pay was not proven. In Louisville Dry Goods Co. v. Lanman, 135 Ky. 163, 121 S.W. 1042, 28 L.R.A.,N.S., 363, 135 Am.St.Rep. 451, the purchase of goods with intent not to pay, with an election to sue for deceit, was held to create a liability not discharged in bankruptcy. Zimmern v. Blount, 5 Cir., 238 F. 740, cited in the majority opinion, in no way resembles a case of the fraudulent buying of goods. I do not regard it as

---

* United States v. Fox, 95 U.S. 670, 24 L.Ed. 538, dealt with a statute which punished anyone who within three months before bankruptcy "under the false color and pretence of carrying on business, and dealing in the ordinary course of trade, obtains on credit from any person any goods or chattels with intent to de-

fraud." Rev.St.U.S. § 5132. The statute was held void as ex post facto and invading the States' police power; but one can hardly doubt that a false pretence of carrying on business, as Congress used the words, might be made by other than an express declaration.

holding that an express false representation is always necessary to avoid the effect of a discharge. The other federal case relied on In re Nuttall, 201 F. 557, is from a District Court. The Judge in his discussion did express discontent with the ruling of the Georgia Court of Appeals, but his decision went no farther than to hold the question doubtful enough to justify enjoining the suit in the State court until the discharge should be granted and the matter be more deliberately examined. I think it clear that one who offers to buy goods and promises to pay, expressly or impliedly, and at the time has no purpose of paying, but intends to obtain the goods for nothing, does obtain them by a false pretense and is not entitled to a discharge from his liability in tort.